**Nos. 2013-1479, -1525**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

01 COMMUNIQUE LABORATORY, INC.,

*Plaintiff-Appellant,*

*v.*

LOGMEIN, INC.,

*Defendant-Cross Appellant.*

Appeals from the United States District Court for the Eastern District of Virginia in case no. 10-CV-1007, Judge Claude M. Hilton.

**BRIEF FOR DEFENDANT-CROSS APPELLANT LOGMEIN, INC.**

WAYNE L. STONER
VINITA FERRERA
MARK C. FLEMING
DANA O. BURWELL
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

ARTHUR W. COVIELLO
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA  94304
(650) 858-6000

November 7, 2013

# CERTIFICATE OF INTEREST

Counsel for Defendant-Cross Appellant LogMeIn, Inc. certifies the following:

1.    The full name of every party or amicus represented in this appeal is:

LogMeIn, Inc.

2.    The names of the real parties in interest represented in this appeal are:

LogMeIn, Inc.

3.    The names of all parent corporations and any publicly held companies that own 10 percent of the party represented are:

None.

4.    The names of all law firms and the partners and associates that appeared in the district court or are expected to appear in these appeals for Defendant-Cross Appellant are:

WILMER CUTLER PICKERING HALE AND DORR LLP:

Wayne Stoner, Vinita Ferrera, Mark C. Fleming, Nathan Walker, Joel Cavanaugh, Philip Seybold, Arthur Coviello, Rachel Gurvich, Silena Paik, Alexandra Amrhein, Leslie Pearlson, Dana Burwell, Andrew Liao, Brian Larivee, Katherine Dirks, Kellie McEvoy

WINSTON & STRAWN LLP:

Charles Bennett Molster, III

Dated:  November 7, 2013

/s/ ARTHUR W. COVIELLO
ARTHUR W. COVIELLO
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
(650) 858-6000

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ...................................................................i

TABLE OF CONTENTS ......................................................................... ii

TABLE OF AUTHORITIES......................................................................v

STATEMENT OF RELATED CASES....................................................1

INTRODUCTION .................................................................................1

STATEMENT OF ISSUES....................................................................5

STATEMENT OF THE CASE ..............................................................6

STATEMENT OF FACTS......................................................................8

I.     The Parties .................................................................................8

II.    Background On Remote Access Technology............................9

III.   The '479 Patent.........................................................................9

IV.   LogMeIn's Products .................................................................13

V.    Prior Proceedings....................................................................16

     A.    Claim Construction And The Prior Appeal......................16

     B.    Pre-Trial Proceedings On Remand.....................................18

          1.    LogMeIn's motion for summary judgment under
               this Court's construction of "location facility".........18

          2.    Supplemental discovery under this Court's
               construction of "location facility"............................19

          3.    Pre-trial motions.......................................................20

     C.    Trial .................................................................................21

          1.    Consistency with this Court's claim construction ...................21

2. Evidence supporting the noninfringement verdict....................22

  i. LogMeIn's servers do not have software that "creates" a "communication channel" or a "communication session." ...............................22

  ii. 01 failed to show that LogMeIn's servers contain the required "location facility" software, as construed by this Court.............................28

  iii. LogMeIn's alleged "locator server" is not "linked to the Internet and having a static IP address"..........................................................31

3. Evidence supporting non-enablement......................................33

4. Jury instructions ........................................................................35

5. Jury verdict and final judgment ................................................36

SUMMARY OF THE ARGUMENT ....................................................37

ARGUMENT ......................................................................................40

I. Standard of Review........................................................................40

II. The Judgment Of Noninfringement Should Be Affirmed............................42

 A. The Noninfringement Verdict Is Supported By Substantial Evidence That LogMeIn Does Not Practice Four Separate Claim Limitations .........................42

  1. The noninfringement verdict is supported by substantial evidence that LogMeIn's servers do not have software that "creates" a "communication channel" or "communication sessions" .....................................42

  2. The noninfringement verdict is supported by substantial evidence that the LogMeIn servers do not contain the required "location facility," as this Court construed it....................................................48

3.      The noninfringement verdict is supported by
        substantial evidence that the LogMeIn servers
        alleged to be the "locator server computer" are not
        "linked to the Internet and having a static IP
        address" ....................................................................................51

III.   There Is No Basis For A New Trial ...............................................................56

       A.      01's Accusations Of Trial Misconduct Are Meritless And
               Unsupported By The Trial Record .....................................................56

       B.      None Of LogMeIn's Defenses Was Inconsistent With
               The Principle That "A" Means "One Or More," And 01
               Waived Any Request For A Jury Instruction On That
               Point  ................................................................................................58

       C.      The District Court Did Not Abuse Its Discretion In
               Admitting Evidence Of LogMeIn's Patents Subject To A
               Limiting Instruction............................................................................60

IV.    Claim 24 Is Invalid For Lack Of Enablement .............................................63

       CONCLUSION ........................................................................................67

# TABLE OF AUTHORITIES

## CASES

Page(s)

*01 Communique Laboratory, Inc. v. LogMeIn, Inc.,*
    687 F.3d 1292 (Fed. Cir. 2012) ......................................................*passim*

*ABT Building Products Corp. v. National Union Fire Insurance Co.*
    *of Pittsburgh*, 472 F.3d 99 (4th Cir. 2006) ...................................41

*ActiveVideo Networks, Inc. v. Verizon Communications, Inc.,*
    694 F.3d 1312 (Fed. Cir. 2012) ....................................................40

*AK Steel Corp. v. Sollac & Ugine,*
    344 F.3d 1234 (Fed. Cir. 2003) .............................................63, 65

*Automotive Technologies International, Inc. v. BMW of North*
    *America, Inc.*, 501 F.3d 1274 (Fed. Cir. 2007)..........................63, 64, 65

*City of Richmond v. Madison Management Group, Inc.,*
    918 F.2d 438, 453 (4th Cir. 1990) ...............................................60

*C.W. Zumbiel Co. v. Kappos,*
    702 F.3d 1371 (Fed. Cir. 2012) ....................................................55

*Dennis v. Columbia Colleton Medical Center, Inc.,*
    290 F.3d 639 (4th Cir. 2002)........................................................41

*Finjan, Inc. v. Secure Computing Corp.,*
    626 F.3d 1197 (Fed. Cir. 2010) ....................................................57

*Fleming v. Escort, Inc.,*No. 09-cv-105,
    2012 U.S. Dist. LEXIS 72190 (D. Idaho May 23, 2012)..................45

*Georgia-Pacific Corp. v. United States Plywood Corp.,*
    318 F. Supp. 1116 (S.D.N.Y. 1970).............................................61

*i4i Limited Partnership v. Microsoft Corp.,*
    598 F.3d 831 (Fed. Cir. 2010) .........................................41, 42, 45, 49

*In re '318 Patent Infringement Litigation,*
    583 F.3d 1317 (Fed. Cir. 2009) ....................................................64

*Kinetic Concepts, Inc. v. Blue Sky Medical Group, Inc.*,
554 F.3d 1010 (Fed. Cir. 2009) ................................................. 53

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
688 F.3d 1342 (Fed. Cir. 2012) ................................................. 44

*King Instrument Corp. v. Otari Corp.*,
767 F.2d 853 (Fed. Cir. 1985) ................................................... 61

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
481 F.3d 1371 (Fed. Cir. 2007) ............................... 4, 63, 65, 66

*Lucent Technologies, Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ........................................... 47, 49

*MagSil Corp. v. Hitachi Global Storage Technologies, Inc.*,
687 F.3d 1377 (Fed. Cir. 2012) ........................................... 63, 66

*Moba, B.V. v. Diamond Automation, Inc.*,
325 F.3d 1306 (Fed. Cir. 2003) ................................................. 60

*National Presto Industries, Inc. v. West Bend Co.*,
76 F.3d 1185 (Fed. Cir. 1996) ........................................... 61, 62

*National Recovery Technologies, Inc. v. Magnetic Separation
Systems, Inc.*, 166 F.3d 1190 (Fed. Cir. 1999) ....................... 65

*Old Town Canoe Co. v. Confluence Holdings Corp.*,
448 F.3d 1309 (Fed. Cir. 2006) ................................................. 41

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
182 F.3d 1298 (Fed. Cir. 1999) ................................................. 55

*Sandberg v. Virginia Bankshares, Inc.*,
891 F.2d 1112 (4th Cir. 1989) ................................................... 41

*Tessera, Inc. v. International Trade Commission*,
646 F.3d 1357 (Fed. Cir. 2011) ................................................. 48

*Verizon Services Corp. v. Cox Fibernet Virginia, Inc.*,
602 F.3d 1325 (Fed. Cir. 2010) ......................................... *passim*

*Versata Software, Inc. v. SAP America, Inc.*,
   717 F.3d 1255 (Fed. Cir. 2013) ...............................................................43, 48, 50, 52

**FEDERAL RULES**

Fed. R. Civ. P. 51 ....................................................................................................60

## STATEMENT OF RELATED CASES

This case was previously before this Court in *01 Communique Laboratory, Inc. v. LogMeIn, Inc.*, No. 2011-1403, 687 F.3d 1292 (Fed. Cir. July 31, 2012) (Fogel, J., sitting by designation, joined by Rader, C.J. & Wallach, J.). Plaintiff-Appellant 01 Communique Laboratory, Inc. ("01") has identified *01 Communique Laboratory, Inc., v. Citrix Systems, Inc., and Citrix Online, LLC*, Case No. 06-CV-0253 (D. Ohio), as a related case. Counsel for Defendant-Cross Appellant LogMeIn, Inc. ("LogMeIn") are unaware of any other case pending in this or any other court that will directly affect or be directly affected by the Court's decision in this appeal.

## INTRODUCTION

After this Court corrected the construction of one limitation of 01's patent and remanded, 01 requested a jury trial. Given this Court's claim construction and other infringement issues, 01 insisted that its infringement claim against LogMeIn was not fit for summary judgment on remand and that there were genuine issues of material fact to be determined by a jury. 01 obtained the jury trial it requested, and after six days of evidence, the jury, applying this Court's claim construction, found that LogMeIn did not infringe. Ample evidence—including testimony of LogMeIn's technical expert and its Chief Technical Officer; admissions from 01's own witnesses; and LogMeIn's source code, technical specifications, and user

1

guides—showed that LogMeIn did not satisfy four limitations of the only asserted claim.

Although 01 urged the district court on remand that it was "time for the matter to be set for trial" (A5504), 01 now asserts that "[i]t was error … to give this case to the jury" (Br. 4), that there was "no evidence" requiring a trial (Br. 10), and that the entire trial was so flawed that not one of LogMeIn's infringement defenses suffices to support the verdict.  None of this is true or consistent with 01's own conduct at trial.

Though 01 now claims (Br. 29, 39) that LogMeIn committed a "blatant" "violation" of this Court's claim construction—a construction that LogMeIn and its expert repeatedly presented to the jury and used throughout the trial—01 raised no such objection during the trial.  Though 01 now argues that LogMeIn's expert testimony was improper and should not have reached the jury, 01 neither filed a *Daubert* motion nor objected to the testimony at trial.  Though 01 now asserts that the entire trial turned on claim construction, the claim constructions that 01 requested were given to the jury and never disputed.  Though 01 now asserts that no reasonable jury could have found noninfringement, 01 did not seek summary judgment on remand, but rather insisted that there were factual issues requiring a trial.  And though 01 now disputes certain (proper) statements made by LogMeIn's counsel and expert during trial, 01 failed to object contemporaneously to all but

2

one of those statements.  The one time that 01 *did* raise an issue that it now asserts

was trial error—regarding references to LogMeIn's own patents—the district court

gave a limiting instruction explaining (correctly, after dismissing 01's doctrine of

equivalents claim from the case) that LogMeIn's patents are "not relevant to the

issue of whether LogMeIn infringes the '479 patent" but are "relevant to other

issues in the case."  A14380.  As the court recognized, LogMeIn was entitled to

point to its own patents not to rebut literal infringement, but to oppose other

contentions by 01, such as infringement by equivalents (prior to that contention's

dismissal), willfulness, and damages, to which even 01 admitted LogMeIn's

patents clearly are relevant.  A14310-14311.

01's failure to object at trial not only means that 01 waived most of its

present assertions of error, but also demonstrates that 01 did not view those

assertions as substantial or even justified at the time.  Indeed, 01's summation

framed the case as a classic battle of the experts about how the LogMeIn system

worked.  A14314 ("Of course, [LogMeIn's expert] thinks he is right.  So, how are

you going to decide between these two technical experts, especially in a complex

technological case.  How are you going to make that decision?").  The jury

properly resolved the credibility fight 01 asked it to resolve.

01 now raises belated accusations of misconduct as a last-ditch effort to

avoid an amply-supported jury verdict of noninfringement.  This effort depends on

distortions of the trial proceedings and assertions often made with no record citation. Far from undermining this Court's construction of "location facility," LogMeIn relied on it heavily, presenting it to the jury repeatedly. On any fair reading of the record, 01 lost not because of any error in the conduct of the proceedings, but because the jury reasonably accepted LogMeIn's evidence over 01's.

The judgment should be altered in one respect: the finding that the asserted patent claim satisfies the enablement requirement, which the Court reviews *de novo*, should be reversed. After 01 sought and obtained a broad construction of "location facility" that permits the location facility to be distributed among multiple locator server computers, LogMeIn showed that 01 did not enable the full scope of that claimed invention. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007) ("The irony of this situation is that Liebel successfully pressed to have its claims include a jacketless system, but, having won that battle, it then had to show that such a claim was fully enabled, a challenge it could not meet. The motto, 'beware of what one asks for,' might be applicable here."). Other than conclusory assertions that the "location facility" might be "sub-divided" and that the "server computer" might be multiple computers, the '479 patent's written description provided no disclosure or teaching about how a multiple-server embodiment of the claim might be implemented. Proof of this

4

inadequate disclosure is a governmental document that 01 submitted to obtain tax benefits for research conducted four years *after* filing its patent application, where 01 told the Government of Canada that, if its locator server computer were to be distributed over different server computers, "*we are not sure how the architecture can still function*." A22825.[1] The lack of disclosure in the patent, coupled with 01's failure to build a functioning multiple-server embodiment even by 2004, is indisputable proof that the inventors had not enabled the claimed invention's full scope when they filed for the patent in 2000.

The judgment of noninfringement should be affirmed, and this Court should hold the asserted claim invalid as not enabled.

## STATEMENT OF ISSUES

1.  Whether the jury's verdict of noninfringement is supported by substantial evidence of any one of the following:

> (a)  the accused LogMeIn servers, individually or collectively, do not contain software that "creates a communication channel" between the remote computer and the host computer;[2]

---

[1]  Emphasis is added except where otherwise noted.

[2]  Herein, as at trial, the term "host computer" and the claim term "personal computer" are used interchangeably. *See* A12468-12469.

(b)    the accused LogMeIn servers, individually or collectively, do not contain software that "creates a communication session" between the remote computer and the host computer;

(c)    under this Court's construction of "location facility," the accused LogMeIn servers, individually or collectively, do not have location facility software that performs all the required functions of the asserted claim;

(d)    under this Court's construction of "location facility," the alleged LogMeIn "locator server" is not "linked to the Internet and having a static IP address."

2.    Whether the district court acted within its discretion in denying a new trial.

3.    (Cross-Appeal)  Whether claim 24 is invalid for lack of enablement.

## STATEMENT OF THE CASE

01 sued LogMeIn for alleged infringement of claim 24 of U.S. Patent No. 6,928,479 ("the '479 patent").  A1901.  The district court initially granted LogMeIn summary judgment of noninfringement.  A4417-4418; A4501.  On appeal, this Court modified the construction of "location facility" and vacated the judgment but declined to enter judgment of infringement as 01 requested (A4743-4744), and instead remanded for further proceedings (A5102).

6

On remand, LogMeIn moved for summary judgment under this Court's revised claim construction, demonstrating that the new construction required a finding of noninfringement for new reasons as to which no genuine fact dispute existed. A5301. 01, for its part, did ***not*** move for summary judgment of infringement, but instead argued that its infringement claim turned on factual issues that needed to be tried to a jury. A5511 ("genuine issues of material fact exist regarding infringement of the 'location facility' element of the claims of the '479 patent under the Federal Circuit's claim construction" (capitalization removed)); A5504 ("It is time for the matter to be set for trial."). The district court ruled as 01 requested, denying LogMeIn's motion for summary judgment and setting the matter for trial. A5901.

The case was tried to a jury over six days in March 2013. At the close of evidence, LogMeIn moved for judgment as a matter of law ("JMOL") on all issues. A11401; A14199-14200. The court granted LogMeIn's motion as to 01's claim for infringement by equivalents (which 01 does not appeal), but denied the motion in all other respects. A14200-14202. 01 also moved for JMOL, which was denied. A14202.

The jury returned a verdict of noninfringement for LogMeIn and found that the asserted claim was not invalid. A1701. The court entered judgment and denied the parties' post-trial JMOL (and 01's new trial) motions, as well as

7

LogMeIn's defense of unenforceability based on inequitable conduct (which

LogMeIn does not appeal).  A1101-1102; A1202.

## STATEMENT OF FACTS

### I.  THE PARTIES

LogMeIn (pronounced "Log-Me-In"), based in Boston, Massachusetts, is

one of the world's leading developers and providers of "remote access" computer

software products, which allow people to access their computers remotely from

other computers.  Founded in 2003, LogMeIn now has over 600 employees and the

second largest market share in remote access products.  A13579; A13582.  Each

week, millions of people use LogMeIn's services.  A12752; A13601.

01, based in Toronto, Canada, claims to sell a remote access product called

"I'm InTouch" that is covered by the '479 patent.  A12453; A12546.  01 admitted

years ago that its patented product "was not effective in capturing market share."

A12548-12549(Cheung); A21811.  01 has not made a profit in any year since it

introduced its remote access product, including before LogMeIn even released its

accused products.  A13019(Stringer).  Having failed in the market, 01 has chosen

to seek licensing fees through litigation; its main business is now suing on its

patent.  A13036-13037(Stringer); A22401.

01 had learned of LogMeIn and its remote access products by 2004, but

waited more than five years after its patent issued before accusing LogMeIn of

infringement.  A12559(Cheung); *see also* A12572; A22503; A1901.  01 sought

over $100 million in damages at trial—more than six times LogMeIn's profits over

its lifetime.  A13540-13541.  Further, despite its delay in bringing suit and despite

having no evidence of lost sales, 01 also sought an injunction.  A13031-13032;

A13035-13036.

## II.    BACKGROUND ON REMOTE ACCESS TECHNOLOGY

Remote access technology enables a user of a ***remote*** computer (such as a

laptop) to access and control a ***host*** computer (such as a home or work desktop)

over a network, such as the Internet.  A12463.  Remote access technology was first

developed in the 1960s, nearly 40 years before 01 filed for the '479 patent.

A13770-13771(Bhattacharjee).  Contrary to 01's suggestion that the '479 patent

was the first remote access system (Br. 6), 01's CEO and named inventor Andrew

Cheung admitted that "[r]emote access wasn't new" when he applied for the '479

patent.  A12463-12464; *see also* A12578 (admitting that "[t]here were a lot of

older solutions" and "[t]here are some solutions that don't infringe").  01's

infringement expert, Dr. Andrew Grimshaw, admitted the same.  A12917.

## III.   THE '479 PATENT

The '479 patent is entitled "System Computer Product and Method for

Providing a Private Communication Portal."  The patent is directed to a system,

method, and computer program product for providing remote access to a "personal

9

computer" from a "remote computer" through an intermediary "locator server computer." A1801(abstract); A1814(1:7-13). Figure 1 illustrates the system:



A1802(colored boxes and labels added). The system includes a host (*i.e.*, personal) computer 14 (green), a locator server computer 12 (red), which includes a "location facility" 6, and a remote computer 30 (blue)—all of which are connected to the Internet 16.

Claim 24, the sole asserted claim at trial, recites:

24. ***A computer program product*** for use on ***a server computer***[3] ***linked to the Internet and having a static IP address***, for providing access to a personal computer from a remote computer, the personal computer being linked to the Internet, its location on the Internet being defined by either (i) a dynamic public IP address (publicly addressable), or (ii) a dynamic LAN IP address (publicly unaddressable), the computer program product comprising:

(a) a computer usable medium;

---

[3] Herein, as at trial and in the prior appeal, the terms "locator server computer" and "server computer" are used interchangeably. *See* A13779-13780; A5113.

(b) computer readable program code recorded or storable in the computer useable medium, the computer readable program code defining a server computer program on the server computer wherein:

(i) the server computer program is operable to enable a connection between the remote computer and the server computer; and

(ii) *the server computer program includes a location facility* and is responsive to a request from the remote computer to communicate with the personal computer to act as an intermediary between the personal computer and the remote computer by creating one or more communication sessions there between, said *one or more communication sessions being created by the location facility*, in response to receipt of the request for communication with the personal computer from the remote computer, by determining a then current location of the personal computer and *creating a communication channel between the remote computer and the personal computer, the location facility being operable to create such communication channel* whether the personal computer is linked to the Internet directly (with a publicly addressable) dynamic IP address or indirectly via an Internet gateway/proxy (with [a] publicly un-addressable dynamic LAN IP address).

A1820.

According to 01, the claimed invention's key aspect was using a "locator server" to provide remote access to computers with "dynamic" (*i.e.*, changing) IP addresses and computers with "publicly unaddressable" IP addresses (*i.e.*, computers behind firewalls or routers).  *See* Br. 6-7; A12432-12433; A12465-12467; A12471-12472; A12478-12479.  However, even 01's expert, Dr. Gregory Ganger, admitted that 01 was not the first to invent remote access to computers with dynamic or publicly unaddressable IP addresses.  A14137.  Dr. Ganger also

11

conceded that 01 was not the first to use a server computer to provide remote access from a remote computer to a host computer.  A14134-14135.

In reexamination proceedings requested by a third party, claim 24 was rejected multiple times as anticipated.[4]  As this Court noted in the prior appeal, 01 overcame those rejections by arguing (through a declaration by Dr. Ganger) that the claimed location facility software component on the locator server created the communication channel, as opposed to "prior art in which another component, such as the remote computer or personal computer, uses the location facility to create the communication channel."  A5110-5111.  As this Court observed, 01's expert "differentiat[ed] between technology in which the location facility *itself* creates the communication channel and technology in which some component *other than the location facility* creates the communication channel."  A5110 (emphasis in original).

During reexamination, 01 (again through Dr. Ganger) also defined what it means to "create" a communication channel, giving the term its ordinary meaning of "bring into existence."  A22302-22303.  01 further represented that "creates" is different from "uses," "assists," "enables," or "facilitates."  A22303 ("Assisting some other component that creates the communication channel is not the same as

---

[4] Eventually, 01 overcame the Examiner's rejection, and the Patent Trial and Appeal Board recently affirmed that decision.

creating the communication channel—the '479 Patent claims require the location facility to do the latter.").

## IV.  LogMeIn's Products

The accused LogMeIn products allow tens of millions of users to access computers remotely and cost-effectively in seconds.  A13601(Anka); A13967-13968(Bhattacharjee).  LogMeIn's products operate in a complex network of three types of servers:  Web servers, Gateway servers, and Database servers.  A13590-13593(Anka).  The LogMeIn system includes 110 Web servers, 103 Gateway servers, and 20 Database servers, located at various "data centers" (A13590-13591(Anka)):



A27001.

The three LogMeIn server types perform distinct functions and run distinct software, much of which is not even LogMeIn software.  A13590-13595(Anka); A13784-13798(Bhattacharjee).  The Web servers provide the user interface to

LogMeIn's customers when they remotely access their computers; they run

Microsoft software called "Microsoft's Internet Information Server." A13590;

A13592; A13787-13791. The Database servers store data and help to manage the

other servers; they run a Microsoft program called "Microsoft SQL Server."

A13951; A13593; A13791-13793. The Gateway servers facilitate communication

between the host computer and the remote computer; they run proprietary software

developed by LogMeIn. A13590-13591; A13593; A13793-13798.

The following diagram provides an example of how LogMeIn's system

functions (A13596-13601):



A27101. In this example, a LogMeIn customer first sets up her host computer in

Miami for remote access. The host computer creates a standing connection (pink)

to a LogMeIn Gateway server in Texas. A13596-13597; A13600. The Gateway

server then communicates to a LogMeIn Database server in Virginia that the host

computer is ready for remote access.  A13597.  Once this is accomplished, when the customer travels with her laptop to Budapest, she will be able to access her host computer remotely by visiting www.logmein.com with her laptop (which is now the remote client).  A13598.  When the remote client visits www.logmein.com from Budapest, it is connected to a LogMeIn Web server in London that hosts the website.  *Id.*  The Web server in London interacts with a Database server in Virginia, which identifies the Gateway server connected to the host computer, and the Web server forwards this information to the remote client.  A13598-13599. The remote client then creates a connection to the Gateway server in Texas (yellow).  A13599.  The Gateway server uses the standing connection previously created by the host computer (pink) to notify the host computer that the remote client is seeking remote access.  A13599-13600.

As indicated, the host computer (not any LogMeIn server) then creates another ***outbound*** connection (yellow) to the Gateway server.  A13599-13600.  At this point, the host computer has created a connection (yellow) to the Gateway server and the client computer has created a separate connection (yellow) to the same Gateway server, and "they are able to exchange information with one another through these two connections."  A13600(Anka).  The LogMeIn Gateway server merely maintains the standing connection (pink) created by the host computer and

15

forwards data packets between the remote client and the host computer. A13796(Bhattacharjee).

Accordingly, the ***host computer and the remote computer***—not any of the LogMeIn servers or their software—create (bring into existence) the connections (communication channels) to the LogMeIn Gateway server and the communication sessions between the computers. A13803(Bhattacharjee) ("In LogMeIn it's always the host or the remote that are creating the channels and the sessions.").

LogMeIn's technology is itself patented, including by patents that issued over the '479 patent. A13708-13709; A12913.

## V. PRIOR PROCEEDINGS

### A. Claim Construction And The Prior Appeal

The only claim term construed in this case was "location facility." At trial, the district court instructed the jury that other claim terms should receive their plain and ordinary meaning. A14372.

The district court previously construed "location facility" as:

a component of a locator server computer that itself: 1) creates communication sessions between a remote computer and personal computer; 2) receives a request for communication with the personal computer from the remote computer; 3) locates the personal computer (and "determines the then location of the personal computer"); and 4) creates a communication channel between a remote computer and the personal computer.

A4408.

16

On appeal, this Court modified the construction of "location facility." The Court explained that the district court correctly required the location facility to perform the four recited functions. A5107. The district court erred, however, in referring to the location facility as a "device"; as both parties agreed, the location facility is "software." A5106. The Court modified the district court's construction to clarify that the "location facility" is "software." A5113-5114.

The Court also held that the district court had erred in requiring the location facility to "be contained on a single computer." A5114. The district court had reached that conclusion based on statements by 01's expert Dr. Ganger during a co-pending reexamination of the '479 patent. A5110. However, this Court disagreed with that reading of the prosecution history, explaining:

> Dr. Ganger opined that in the patented invention the location facility creates a communication channel between the remote computer and the personal computer, and that this 'create' limitation would not be satisfied by a location facility 'that is simply used by some other component that creates the communication channel.'

A5110. The Court held that these statements did not disclaim "distribution of the location facility among multiple computers." A5111. Instead, the Court found that Dr. Ganger "was differentiating between technology in which the ***location facility*** itself creates the communication channel and technology in which ***some component other than the location facility*** creates the communication channel." A5110 (emphasis added). The Court therefore modified the district court's

17

construction by adding that "[t]he locator server computer may comprise one or more computers, and the location facility may be distributed among one or more locator server computers." A5114. The Court also deleted the word "itself" because that word "might misleadingly suggest that all of the functions of the location facility must be performed on a single computer." A5113-5114.

Making these two modifications, the Court construed "location facility" as:

> Software on a locator server computer that: (1) receives a request for communication with the personal computer from the remote computer; (2) determines the then current location of the personal computer; (3) creates a communication channel between the remote computer and the personal computer; and (4) creates one or more communication sessions between the remote computer and the personal computer. The locator server computer may comprise one or more computers, and the location facility may be distributed among one or more locator server computers.

A5113-5114. Although 01 asked the Court to direct judgment of infringement, the Court did not do so, instead vacating and remanding. A5114.

## B. Pre-Trial Proceedings On Remand

### 1. LogMeIn's motion for summary judgment under this Court's construction of "location facility"

On remand, LogMeIn moved again for summary judgment of noninfringement. A5301. First, LogMeIn argued that, "[a]s recognized by the Federal Circuit, the location facility software must perform all of the functions enumerated in the claim" and that the accused LogMeIn software did not perform those functions. A5314-5315; A5320. Second, LogMeIn showed that the

collection of LogMeIn servers that 01 accused of being the claimed "locator server computer" was not linked to the Internet and having a static IP address.  A5326-5327.

01 did not move for summary judgment of infringement on remand, instead arguing that infringement turned on factual issues triable to a jury.  A5511 ("genuine issues of material fact exist regarding infringement of the 'location facility' element … under the Federal Circuit's claim construction" (capitalization removed)); A5512 ("genuine issues of material fact remain to be decided by the jury" as to the "location facility" element).  01 also argued that "genuine issues of material fact exist regarding whether LogMeIn's locator server has a location on the Internet defined by a static IP address."  A5514 (capitalization removed).  01 reiterated the need for a jury trial at oral argument.  *See* A5504 ("It is time for the matter to be set for trial."); A5813 ("This case needs to go to trial.").

The district court denied summary judgment and set the matter for trial. A5814-5815.

### 2. Supplemental discovery under this Court's construction of "location facility"

On remand, the parties engaged in supplemental expert and fact discovery. LogMeIn's expert, Dr. Samrat Bhattacharjee, employing this Court's revised claim construction, provided a supplemental report substantiating additional noninfringement arguments.  Dr. Bhattacharjee also provided a supplemental

invalidity report, explaining that, under this Court's construction of "location facility," claim 24 was not enabled under 35 U.S.C. § 112, ¶ 1.[5]  LogMeIn's supplemental contentions and reports expressly relied on and employed this Court's construction that the "[t]he locator server computer may comprise one or more computers, and the location facility may be distributed among one or more locator server computers."  A5113-5114.

### 3.    Pre-trial motions

In February 2013, pursuant to court-ordered deadlines, the parties filed motions in limine and *Daubert* motions.  01 did not move to preclude LogMeIn's expert, Dr. Bhattacharjee, from testifying regarding the noninfringement or invalidity opinions in his reports.  LogMeIn moved to preclude 01's expert, Dr. Grimshaw, from testifying about infringement, because he did not identify a single line of LogMeIn source code supporting his infringement opinion.  *See* A8101; A8109; A8113-8115.  The district court denied the parties' motions in limine and LogMeIn's *Daubert* motions.  A11201-11204.

---

[5] Dr. Bhattacharjee also explained that claim 24 was anticipated by or obvious in view of the prior art.  LogMeIn does not cross-appeal the court's denial of JMOL with respect to the jury's adverse determination on those issues.

### C.  Trial

#### 1.  Consistency with this Court's claim construction

Throughout the trial, this Court's construction of "location facility" was presented and discussed before the jury over **twenty times**.  *See* A12809; A12948-12949; A12978-12979; A13785-13786; A13946; A13958-13960; A13996-13997; A14009; A14104-14105; A14115; A14152; A14156; A14173; A14179-14780; A14314-14315; A14317; A14346-14347; A14350; A14362; A14372; A14401.

The Court's construction of "location facility" was one of LogMeIn's demonstrative exhibits (A27301), which both LogMeIn and 01 used before the jury.  *See* A12948-12949; A12978-12979; A13785; A13958.  LogMeIn's expert expressly relied on this Court's construction of "location facility" in presenting his opinions.  *See* A13785-13786.  LogMeIn's counsel's closing argument also expressly relied on this Court's construction of "location facility":

> There's no location facility under the Court's claim construction or this document because there's no software that does all four functions of a location facility.  ***Yes, it does say the software can be distributed among different computers.  It does say there can be multiple servers.  But it also says, as [01's counsel] did not show you, that software has to perform four functions.***  And if there's no software that does it, it doesn't perform those four functions.

A14346-14347.  Throughout the trial, 01 ***never once objected*** to any testimony or argument presented by LogMeIn as supposedly inconsistent with this Court's claim construction.

21

## 2. Evidence supporting the noninfringement verdict

LogMeIn presented substantial evidence that its products do not meet four limitations of claim 24. Each was supported by testimony of LogMeIn's technical expert Dr. Bhattacharjee and its Chief Technical Officer Marton Anka, admissions from 01's own witnesses, and LogMeIn's source code, technical specifications, and user guides. Taking the record in the light most favorable to the verdict, the jury was entitled to find the following:

### i. *LogMeIn's servers do not have software that "creates" a "communication channel" or a "communication session."*

Under the Court's construction, the "computer program product" and "location facility" limitations of claim 24 require "software on a locator server computer" that, among other things, "creates a communication channel between the remote computer and the personal computer" and "creates one or more communication sessions between the remote computer and the personal computer." A5113-5114. The record contains substantial evidence that no LogMeIn software satisfies these limitations.

Although 01 had the burden of proof, its expert Dr. Grimshaw (who provided 01's only alleged infringement evidence) conceded that he "didn't cite a single line of source code." A12934. Instead, he gave conclusory and inaccurate testimony. *E.g.,* A12808-12809 ("[T]he communications channel is … just *some*

data structures in a C++ program *somewhere* that hooks all these things together.").

By contrast, Dr. Bhattacharjee testified—with specific citations to LogMeIn source code and other documentation, and no objection by 01 (A13795)—that none of the LogMeIn Web servers, Gateway servers, or Database servers (together, the accused "locator server") includes software that (individually or collectively) creates a communication channel or a communication session between a remote computer and the personal computer (*i.e.*, host computer) as claim 24 requires. A13784-13785; A13790-13796. Rather, the channels and sessions are created by the host computer and the remote computer, not any software on LogMeIn servers.

As Dr. Bhattacharjee and Mr. Anka explained, LogMeIn's Gateway, Database, and Web servers (which together are what 01 accused as running the claimed "server computer program") are incapable of creating channels to or sessions with computers at publicly unaddressable IP addresses. A13803. In particular, if a host computer is behind a firewall or a router, the LogMeIn Gateway server cannot connect to that computer, and thus cannot create the communication channel or session. A12740(Anka) ("The firewall inhibits inbound connections.").

Instead, host computers and remote computers at publicly unaddressable IP addresses create communication channels by making *outbound* connections to a

23

LogMeIn Gateway server.  A12732(Anka) ("[E]ssentially the LogMeIn Pro

product allowed access to any computer as long as that computer could make an

***outbound*** connection."); A12733(Anka) ("So, again, as mentioned earlier, if a

computer can make an outbound connection but cannot receive inbound

connections, the basic principle is the outbound connection ***that it makes*** can be

used to exchange information with it."); A12965(Grimshaw) (agreeing that in

LogMeIn's system, the host computer creates an "***outgoing TCP connection***" to

the Gateway server).  The host and remote computers create these connections by

sending Internet Protocol (IP) packets to the Gateway server that establish a

Transmission Control Protocol (TCP) connection to the Gateway server.  A12741-

12742.

LogMeIn technical documents likewise confirmed that the host and remote

computers create "outgoing" connections to the LogMeIn Gateway server.  The

"link" between the host computer and the Gateway server is "***initiated by the host***

and firewalls treat it as ***an outgoing connection***."  A19206; *see also* A19212 ("The

host, when making a connection to the gateway, checks its SSL certificate to make

sure it is connecting to one of the LogMeIn gateway servers.").  Similarly, the

"***client*** browser [on the remote computer] ***establishes a connection*** to [the]

LogMeIn" Gateway server.  A19207; A19212.

Once the host and remote computers create these outgoing connections (*i.e.*, channels) to the LogMeIn Gateway server, the host and remote computers—not the LogMeIn servers—create communication sessions by "exchang[ing] information with one another through these two connections." A13600. The Gateway servers do not create (bring into existence) these channels or sessions, but merely "forward[] the subsequent encrypted traffic between the client and the host." A19207.

Accordingly, as Dr. Bhattacharjee and Mr. Anka explained without any objection from 01, the LogMeIn system does not infringe because the communication channels and sessions are ***created by the host and remote computers***—not any software on the LogMeIn servers. A133796(Bhattacharjee); A12740(Anka) ("[T]he way that we are using our [LogMeIn] product is to utiliz[e] a connection that the computer behind the firewall makes to the outside world."); A13600(Anka) ("It's happening on the diagram so the host computer creates an outbound connection that connects to the gateway server, and this is really it."); *Id.* ("At this point the host computer is connected to the gateway server, the client computer is connected to the gateway server, and they are able to exchange information with one another through these two connections.").

01's own expert, Dr. Ganger, admitted that there is no infringement if the software on the host or the remote computer creates the communication channels

and sessions, rather than the software on the LogMeIn servers. A14145 ("If you have a remote computer, for example, another claim component, and the software of the remote computer creates the communication channel and perhaps just uses the alleged location facility as an information source, say, right, as opposed to the location facility driving the process of creating that communication channel, then, yeah, that's not going to satisfy the claims.").

In addition to this testimony showing that communication channels or sessions are created by the ***host and remote computers***, Dr. Bhattacharjee provided detailed testimony explaining the functions of the LogMeIn servers and their software, demonstrating ***why*** none of them creates the required communication channel or session.

In particular, as Dr. Bhattacharjee explained, the Web servers are responsible for providing the user interface for the LogMeIn webpage and contacting the Database servers to identify the Gateway server associated with a particular host computer. A13788-13789; *see also* A13598-13599(Anka); *supra* pp. 13-14. The Database servers are responsible for storing information regarding the host computers that are connected to LogMeIn Gateway servers and providing this information to the Web server when a user attempts to access a particular host computer remotely. A13791-13793; *see also* A13598-13599(Anka); *supra* p. 14. And the Gateway servers are responsible for maintaining the standing connection

26

*created by the host computer* and relaying data packets between the remote client and the host computer. A13793-13796; *see also* A13599-13600(Anka); *supra* p. 14. For each server, Dr. Bhattacharjee specifically identified and explained portions of the server's source code. *See, e.g.*, A13794-13795.

Dr. Bhattacharjee also explained (and 01's experts agreed) that "relaying packets is not creating a communication channel or a communication session." A13796(Bhattacharjee); *see also* A12965-12966(Grimshaw); A14145(Ganger). As Dr. Bhattacharjee explained further, none of the Web, Database, or Gateway servers contains any code that would allow it to create a communication channel or session between a remote computer and a host computer. A13790-13796.

01's expert, Dr. Grimshaw, asserted that the LogMeIn Gateway server created the required communication channels and sessions because "the communications channel is the high level abstraction that moves the bytes back and forth." A12808-12809. But on cross-examination, Dr. Grimshaw admitted that simply "forwarding packets" back and forth does ***not*** create a communication channel between the host computer and the remote computer:

> *forwarding packets simply over that one piece of the channel* from the personal computer to the host computer, sending packets along that ***does not in and of itself create a communication channel*** from the personal computer to the host computer.

A12965-12966.

Dr. Grimshaw also could not identify any specific source code supporting

his claim that the LogMeIn Gateway server creates the communication channels or sessions. A12934; A12776-12777. Dr. Grimshaw simply asserted that the communication channel is "just *some* data structures in a C++ program *somewhere* that hooks all these things together." A12809. Dr. Grimshaw never explained *what* "data structures" he was referring to or *how* they "hooked all these things together." *Id.*

Circumstantial evidence also undermined 01's infringement claim. Before changing their business strategy to try to make money by suing others instead of selling products, 01 knew of LogMeIn and its products for five years, investigated whether those products infringed, and had a motivation and duty to 01's shareholders to stop infringement if there was any, yet 01 did nothing to try to stop LogMeIn from marketing its products. A12568-12569(Cheung); A12572-12578. To the contrary, 01's CEO and named inventor Mr. Cheung testified that, after performing this investigation, he never even considered suing LogMeIn until years later (after 01 changed its business strategy) and, even after bringing suit, he did not know whether LogMeIn infringed or not. A12575-12578.

> **ii.** **01 failed to show that LogMeIn's servers contain the required "location facility" software, as construed by this Court**

As construed by this Court, the "location facility" software must perform four functions. A5113-5114; *see also supra* p. 18. 01's expert Dr. Grimshaw

testified that some unspecified combination of different software programs running on LogMeIn's Web, Gateway, and Database servers constituted the claimed location facility. A12805-12806. But Dr. Grimshaw did not identify any source code file anywhere in LogMeIn's servers that performs any of the location facility's claimed functions. A12933 ("[I]t's true I didn't say this function is contained in this file and that function is contained in this file."). Yet Dr. Grimshaw admitted that "the source code is used to define what the software does." A12931; *see also* A12932 ("source code says what it is that the machine or the software is doing at any given point in time"). 01's other expert, Dr. Ganger, likewise admitted the importance of source code, testifying that "for a person like [him], the source code is the best thing to look at." A14128-14129.[6] Dr. Grimshaw's only excuse for not citing source code was that "[t]he source code is pretty technical. If you don't understand the various languages, it can be – it can really look like a bunch of jibber." A12776. Dr. Grimshaw merely testified that the source code "confirms my opinions." A12932-12933. Notwithstanding that claim 24 is directed to a "computer program product," Dr. Grimshaw insisted that "I didn't feel a need to cite individual lines of source code" or explain the code to the jury. *Id*.

---

[6] All of the technical witnesses agreed that source code was critical to understanding how the software actually works. *See* A13768(Bhattacharjee); A13608(Anka); A12932(Grimshaw); A14128-14129(Ganger).

By contrast, Dr. Bhattacharjee explained the important excerpts of the source code to the jury and testified (again, without any objection by 01) that the software components on the accused LogMeIn servers did not satisfy the claimed "location facility" limitation because they did not, individually or collectively, perform all four location facility functions. *See* A13784-13798; A13804; *see also supra* pp. 13-14.

Dr. Bhattacharjee also testified (again, without objection) that the Web server software, the Database server software, and the Gateway server software did not act together as a distributed "location facility." A13796-13804; *see also supra* pp. 13-14. He explained that the software programs running on the Web, Database, and Gateway servers are written in different languages and were developed and function independently of one another—indeed, the Web server software and Database server software were developed primarily by Microsoft. A13796-13798. Each also operates in a stand-alone manner. A13797 ("They can be started independently, they can be ended independently."). Each also performs separate and independent functions and using only standard programming interfaces. *Id.* ("The web server and the gateways don't even talk."). As Dr. Bhattacharjee further explained, these different software components are not merely one big software program distributed among different server computers.

30

A13797-13798.  LogMeIn's Chief Technical Officer testified similarly.  A13595-13596(Anka).

>### iii.    *LogMeIn's alleged "locator server" is not "linked to the Internet and having a static IP address"*

Dr. Bhattacharjee also testified (again without objection) that, under this Court's construction of "location facility," the combination of the LogMeIn Web, Gateway, and Database servers that 01 alleges is a "locator server" is not "linked to the Internet and having a static IP address."  A13804-13807.

Claim 24 requires that the locator server computer(s) (whether comprising "one or more" computers) be "linked to the Internet and having a static IP address."  This static IP address "is fixed and known."  A1817(7:34-36).  As Dr. Bhattacharjee explained, the alleged LogMeIn "locator server" is not linked to the Internet having such a static IP address.  A13804-13807.  The LogMeIn Database server (which 01 alleges is part of the "locator server") is not linked to the Internet *at all.*  A13805-13807.  The Gateway server (which 01 also claims is part of the locator server) only had a static IP address before 2012; it now has a *dynamic* IP address.  A13806.  And all three server types have different locations defined by different IP addresses; there is no way to address the three server types with the same static IP address.  A13807.



A27201.  As Dr. Bhattacharjee explained, if (as 01 contends) the Web, Database,

and Gateway servers are all part of the claimed locator server computer, then it is

not enough for the Web server to have one static IP address, the Gateway server to

have a different static IP address, and the Database server to have an IP address

that is not even addressable by computers outside LogMeIn's private network.

A13807.  Instead, there must be *at least one* static IP address that can be used to

connect to all of the servers that comprise the alleged "locator server computer(s)."

*See id.*  There is no such IP address in LogMeIn's system, and 01 provided no

evidence that there is.  *See id.*; A13808-13809.

Contrary to what it argues now, 01 did not object before or during trial to

any of this testimony by Dr. Bhattacharjee or assert that the issue turned on claim

construction.  Instead, 01 argued that, because the claim term was not construed,

32

the question whether this limitation was met was a fact question for the jury. A14200-14201.

### 3. Evidence supporting non-enablement

LogMeIn also demonstrated that, as of 2004, 01 had not implemented, and did not know how to implement, a remote access system with a location facility distributed over multiple server computers. A13934-13938; A22801-22828.

The '479 patent itself provides no guidance regarding how to build a multiple-servers implementation of the claimed locator server computer. *See* A1816(5:24-25) (merely asserting that "Server Computer 12 may comprise one or more computers, as is well known"); A1818(10:13-16) ("[I]t should be understood that such facilities can be combined with other facilities comprising the present invention, or such facilities can be sub-divided into separate facilities."). And 01's own actions confirmed the inadequacy of this disclosure.

On June 30, 2004, four years after applying for the '479 patent, 01 submitted a document, co-authored by Mr. Cheung, to Canada's Scientific Research and Development Program to obtain research-related tax benefits. A22801-22828; A12553-12557; A12720-12723(Cheung). The submission described 01's work on "iServer," which was 01's code name for its "I'm InTouch" product that practices the '479 patent. A12520; A12532.

In its 2004 submission, 01 described numerous problems with its iServer project when it attempted to divide the locator server computer's functions into a "multiple-servers platform," also called "server-farming." *See* A12555-12557; A12720-12723(Cheung). When describing its "Technical Objectives" for the year 2004, 01 told the Government of Canada that: "[w]ith the completion of many different phases of the iServer project, we are beginning to encounter a related problem—*multiple-servers platform*." A22825. 01 also stated that, as of 2004, it had only built a "single server platform" for its iServer. *Id.*

01 also described the many "Technological Uncertainties" it faced in implementing its iServer in a multiple-servers platform. A22825-22826. 01's submission described "the biggest uncertainty" as follows:

> First of all, the biggest uncertainty is that we are not sure at all whether the farming can work without affecting the efficiency of data delivery throughput. … Now if the Locator registration servers and the Locator portal servers are located in different machines, *we are not sure how the architecture can still function*.

A22825; A12556; A12720-12723(Cheung). 01 described its repeated failures to implement the multiple-server platform as "an endless chasing situation." A22826; *id.* ("A few other attempts were tried but without success."). 01 also said it had "totally abandoned" possible implementations of a separate locator registration server and that other multiple-server "prototypes" "had not been completed yet." *Id.* 01 noted that "more problems and uncertainties are expected during the

34

implementation and testing process." *Id.* 01 never disclosed these failures to the Patent Office during the '479 patent's original prosecution or during its reexamination, which was pending during the trial. A12558-12559(Cheung).

At trial, Mr. Cheung merely asserted (contradicting what he had told the Canadian government) that 01 had in fact developed a multiple-server embodiment of the locator server before it filed for the patent. A12515. Even 01's own expert witness admitted he had seen no document corroborating Mr. Cheung's assertion. A14190-14191 ("I've not seen such a document.").

### 4.    Jury instructions

The district court twice instructed the jury regarding this Court's construction of "location facility." A14372; A14451. The court also instructed the jury—as 01 and LogMeIn agreed—that "[y]ou should give the rest of the words in claim 24 their ordinary meaning to a person skilled in the art." A14372; A14388-14390.

01 requested and received (without objection) an instruction that LogMeIn's own remote access patents were not relevant to the issue of (literal[7]) infringement:

> Now, you have heard evidence that LogMeIn has its own patents. You are instructed that whether or not LogMeIn has patents in the same area is not relevant to the issue of whether LogMeIn infringes

---

[7] The instruction was given after the district court granted LogMeIn's pre-verdict request for JMOL on 01's claim of infringement under the doctrine of equivalents. A14200. Consequently, the only remaining infringement contention was literal infringement.

the '479 patent, but such evidence is relevant to other issues in the case.

A14380. 01 incorrectly asserts (Br. 43) that its request for an instruction that LogMeIn's patents are not relevant to infringement "was denied." On the very page 01 cites, the district court **granted** 01's request to instruct the jury that 01's patents are "not relevant to the issue of infringement" (A14311), and 01 did not object to the court's phrasing of the instruction (A14310-14313, A14388-14390).

After reading its instructions, the district court asked the parties whether there was "any objection to the instructions I gave or the manner in which I gave them." A14388. 01 raised only two objections that are not at issue on appeal. A14388-14390.[8] 01 did not object to the district court's instructions regarding claim construction or the relevance of LogMeIn's patents. *Id.*

### 5. Jury verdict and final judgment

During deliberations, the jury asked the district court to repeat the construction of "location facility," and the district court did so. A14451.

After the verdict of noninfringement and no invalidity, the district court denied 01's post-trial motion for JMOL or a new trial. The court found that "[t]here was ample evidence to support the verdict and the verdict was reasonable." A1202. The court also found that "LogMeIn did not introduce improper facts or

---

[8] Specifically, 01 objected to the reasonable royalty instruction and the verdict form, which asked the jury to decide infringement for LogMeIn's "original architecture" and its "modified architecture." A14388; *see also* A1701.

evidence in relation to the claim construction of location facility or its own patents, and the Court properly instructed the jury on the definition of location facility and the issue of Defendant's patents." *Id.* The court also denied LogMeIn's motion for JMOL regarding invalidity. *Id.*

## SUMMARY OF THE ARGUMENT

1.      The noninfringement verdict is amply supported by substantial evidence that LogMeIn's accused products do not meet four claim limitations, all employing or consistent with this Court's construction of "location facility."

The evidence showed that LogMeIn's accused products do not have location facility software that "creates a communication channel" or "creates one or more communication sessions" between a host and a remote computer.  Instead, the host and remote computers create communication channels by making outbound connections to a LogMeIn Gateway server.  Likewise, the host and remote computers create communication sessions by exchanging information with one another using the two channels that they—not any LogMeIn server software— created.

Substantial evidence also shows that LogMeIn's system does not contain the claimed "location facility" software under this Court's construction.  Citing specific source code, LogMeIn's expert explained that the software on LogMeIn's servers, individually or collectively, does not perform the four functions of the

"location facility" and is not a distributed software implementation of the claimed "location facility." 01's expert offered only conclusory and inconsistent testimony that the jury was free to reject.

Substantial evidence also shows that the combination of the LogMeIn Web, Gateway, and Database servers that 01 asserts constitutes the claimed "locator server" is not "linked to the Internet and having a static IP address." When the locator server comprises more than one computer, claim 24 requires that those computers be "linked to the Internet and having a static IP address." LogMeIn presented substantial evidence that this limitation is not met, because there is no static IP address linked to the Internet in the LogMeIn system that can be used to connect to all of the servers that 01 asserts comprise the "locator server computer." 01 did not and could not present any contrary evidence.

01 did not object to any of this evidence at trial, and there was no disputed issue of claim construction. 01 has waived its present assertions of error, which are meritless in any event.

2.   The district court also properly exercised its discretion in denying 01's request for a new trial. 01's accusations of trial misconduct were waived and are meritless.

First, far from ignoring or violating this Court's construction of "location facility," LogMeIn used this Court's construction repeatedly and affirmatively at

trial to support both its noninfringement and invalidity positions. 01 never

objected during trial to any of LogMeIn's arguments or evidence as inconsistent

with the claim construction in any respect. The jury was repeatedly instructed to

use this Court's construction and is presumed to have done so.

Second, LogMeIn never denied that "a" means "one or more"; indeed,

LogMeIn's expert testified that he understood that "a" means "one or more" and

used that meaning in reaching his conclusions. A13957. Further, before the jury

instructions were given, 01 agreed with the district court that the plain meaning of

"a" is already part of this Court's construction of "location facility." A14207.

After voicing this agreement, 01 never raised another objection on this issue before

the jury deliberations, despite raising other, unrelated objections after the district

court read the instructions to the jury. A14388-14390. Accordingly, 01 failed to

preserve any objection to the jury instructions on this point. Moreover, even if the

district court erred in deciding (with 01's agreement) that a "one or more"

instruction was not needed, 01 has shown no prejudice from it. Nothing prevented

01 from arguing that point in summation; in fact, 01 did exactly that. A14317.

Third, the evidence of LogMeIn's patents was properly admitted as relevant

to issues of damages, willfulness, whether LogMeIn "stole" 01's invention, and

infringement by equivalents (which 01 pursued until the court granted JMOL at the

close of all evidence). 01 stated "no objection" to LogMeIn's patents being

offered into evidence (A12912-12913) and did not make a contemporaneous objection to any testimony or questioning on those patents.  At no time did LogMeIn use its patents as evidence of no literal infringement.  And eliminating any conceivable issue, the district court granted 01's request for a limiting instruction, properly informing the jury that the LogMeIn patents were not relevant to literal infringement, but were relevant to other issues.

3.      This Court should hold claim 24 invalid because the '479 patent disclosure fails to enable the full scope of claim 24.  The patent does not teach how to make a functioning multiple-servers implementation of the claimed locator server computer, and 01's own business records show that, four years after filing for the '479 patent, 01was still unable to make a functioning multiple-servers implementation of the claimed invention.

## ARGUMENT

## I.      STANDARD OF REVIEW

This Court reviews the denial of JMOL under regional circuit law. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1319 (Fed. Cir. 2012).  The Fourth Circuit reviews JMOL rulings *de novo*, determining whether substantial evidence supports the verdict.  *Id.*  The Fourth Circuit affirms a verdict if, viewing the evidence in the light most favorable to the verdict, "there was a legally sufficient evidentiary basis" for a reasonable jury to find for the

prevailing party. *ABT Building Prods. Corp. v. National Union Fire Ins. Co. of Pittsburgh*, 472 F.3d 99, 113 (4th Cir. 2006). "If reasonable minds could differ about the verdict," the Fourth Circuit is "obliged to affirm." *Id.*, 742 F.3d at 113.

The Court should grant a new trial only if the verdict: (1) is against the clear weight of the evidence, (2) is based on evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 650 (4th Cir. 2002).

Infringement is a question of fact reviewed for substantial evidence. *i4i Ltd. P'Ship v. Microsoft Corp.*, 598 F.3d 831, 849-850 (Fed. Cir. 2010), *aff'd*, 131 S. Ct. 2238 (2011). This Court affirms a general verdict of noninfringement if substantial evidence supports any alternative factual basis for noninfringement. *Id.*; *see also Sandberg v. Virginia Bankshares, Inc.*, 891 F.2d 1112, 1122 (4th Cir. 1989) ("[T]he submission of both correct and incorrect factual bases supporting a single theory of recovery is not grounds for reversal of a judgment on a general verdict."), *rev'd on other grounds*, 501 U.S. 1083 (1991).

Enablement is a question of law reviewed without deference, based on underlying factual findings reviewed for substantial evidence. *Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1320 (Fed. Cir. 2006).

41

## II.   THE JUDGMENT OF NONINFRINGEMENT SHOULD BE AFFIRMED

### A.   The Noninfringement Verdict Is Supported By Substantial Evidence That LogMeIn Does Not Practice Four Separate Claim Limitations

While 01's theory of infringement relied almost entirely on simply equating LogMeIn's distributed system of servers to the claimed "location facility"—and then stopping—LogMeIn's evidence focused on the actual, multiple claim limitations.  LogMeIn presented evidence of four noninfringement defenses at trial, any one of which suffices to affirm the judgment.  *See i4i*, 598 F.3d at 849.

### 1.   The noninfringement verdict is supported by substantial evidence that LogMeIn's servers do not have software that "creates" a "communication channel" or "communication sessions"

01 was required to prove that software on LogMeIn's accused servers "creates" a "communication channel" and "one or more communication sessions" between a remote computer and a host computer.  A1820; A5113-5114.  There was no dispute about what "create" means—as 01 represented in prosecution (through the Ganger Declaration cited in this Court's prior opinion), the plain and ordinary meaning of "create" is "bring into existence."  A22302-22303.  01's and LogMeIn's witnesses confirmed and used this plain meaning at trial. A13802(Bhattacharjee); A14148-14149(Ganger).  And the district court, at 01's request, instructed the jury that the term receive its plain and ordinary meaning. A14372.

The dispute over whether LogMeIn's servers created the required communication channels and sessions was thus a fact dispute for the jury to resolve. *See Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1262 (Fed. Cir. 2013) (where the parties had not requested a construction of "computer instructions," the question whether the limitation was met was "a pure factual issue"). 01 alleged that software on LogMeIn's Gateway servers created the required communication channels and sessions, but its expert cited no source code to support his contentions and gave inconsistent testimony. A12808-12809; A12934; *see supra* pp. 20, 22-23, 27-28. LogMeIn countered with testimony (to which 01 did not object) and documents (including specific citations to the source code) showing that LogMeIn's servers do not have any software that creates communication channels or sessions between the host and the remote computer. *See supra* pp. 23-27. As Mr. Anka and Dr. Bhattacharjee explained, the host and remote computers—not software on the LogMeIn servers—create the communication channels and sessions. A13796(Bhattacharjee); A13600(Anka); *see supra* pp. 23-27.[9] Dr. Bhattacharjee explained that, even viewing all three

---

[9] 01 mischaracterizes Dr. Bhattacharjee's testimony as stating that the host and remote computers merely send their IP addresses to the locator server. Br. 36. That assertion is belied by the trial record, which contains detailed testimony and documentary evidence explaining how the host and remote computers—not any software on the LogMeIn servers—create the communication channels and sessions. *See supra* pp. 23-27.

server types collectively, LogMeIn's system does not create the communication

channels and sessions between the host and remote computers; rather, the host and

remote computers create the communication channels and sessions.

> Q. And even if you look at these servers or the software together as a
> location facility, as Dr. Grimshaw does, in that case did the LogMeIn
> servers create a communication channel or a communication session?

> A. No, it's—no, they don't.  It's physically impossible for it to do so.

A13804.  01 never attempted to challenge this testimony on cross-examination.

01 now asks the Court to ignore the substantial evidence standard of review

and credit the unsupported and conclusory testimony of its expert, Dr. Grimshaw.

Br. 34-35.  But in this "battle of experts," the jury was entitled to "make credibility

determinations and believe the witness it considers more trustworthy."  *Kinetic*

*Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1362 (Fed. Cir. 2012).

There are many reasons the jury could have disbelieved Dr. Grimshaw,

whose testimony was 01's sole "proof" of infringement.  He merely asserted that

the communication channel is "just some data structures in a C++ program

somewhere that hooks all these things together" and is stored somewhere in the

Gateway server.  A12808-12809.  Dr. Grimshaw never explained ***what*** "data

structures" he was referring to or **how** they supposedly "hooked all these things together." *Id.* [10]

Dr. Grimshaw also failed to point to any LogMeIn software code supporting his opinion. A12776-12777; A12808-12809; A12934. His only excuse was that "[t]he source code is pretty technical" and "it can really look like a bunch of jibber." A12776-12777. The jury was free to reject Dr. Grimshaw's testimony on this basis. *See i4i*, 598 F.3d at 848 (ruling that the jury could "disbelieve Microsoft's expert, who relied on the S4 user manual, and credit i4i's expert, who opined that it was impossible to know whether the claim limitation was met without looking at S4's source code"); *Fleming v. Escort, Inc.*, No. 09-cv-105, 2012 U.S. Dist. LEXIS 72190, at *7 (D. Idaho May 23, 2012) ("There is no way for the Court or the jury to evaluate [the expert's] methodology when he has failed to explain how the source code works.... [H]is opinion is the classic 'black box' asserting that the source code makes the products non-infringing because he says so.").

Dr. Grimshaw was also effectively impeached. On direct examination, Dr.

---

[10] In its appeal brief, 01 uses the passive voice to suggest (incorrectly) that Dr. Bhattacharjee agreed with Dr. Grimshaw, arguing that Dr. Bhattacharjee admitted that "communications channels and sessions *were created* when the LogMeIn *system was used*." Br. 35. Of course, the mere creation of communications channels and sessions does not satisfy the claim; they must be *created by the location facility* (A5113-5114; A14145), which 01 asserted was the software on the Web, Gateway, and Database servers.

Grimshaw asserted that the communication channel was just a "high level abstraction that moves the bytes [*i.e.*, data] back and forth." A12808-12809. But he conceded on cross-examination that merely forwarding data back and forth between two computers is not "creating" the required communication channels and sessions. A12965-12966. This inconsistency alone entitled the jury to reject Dr. Grimshaw's testimony as incredible. Additionally, as described above (pp. 22-28), LogMeIn presented far more compelling and supported evidence contradicting Dr. Grimshaw's infringement opinion.

01 also now asserts (Br. 36) that Dr. Bhattacharjee's testimony was somehow inconsistent with the plain meaning of "creat[ing]" a "communication channel" and "one or more communication sessions" and that he improperly relied on Dr. Ganger's statements in the prosecution history. Br. 36-37. To the contrary, even leaving aside that 01 did not object at trial to any of this, Dr. Bhattacharjee's testimony was fully consistent with the plain meaning of the two "create" terms. Both parties' witnesses agreed that Dr. Ganger's statements during prosecution applied the plain meaning of "create" (*i.e.*, to bring into existence). A13802(Bhattacharjee); A14148-14149(Ganger). LogMeIn's and 01's experts agreed that if the host or remote computer creates the communication channels and sessions, then there is no infringement. *See, e.g.*, A13802-13803(Bhattacharjee); A12963(Grimshaw); A14145, A14155(Ganger). This is consistent with this

Court's earlier recognition that, during reexamination, 01 distinguished the claimed invention "from prior art in which ***another component, such as the remote computer or personal computer***, uses the location facility to create the communication channel." A5110-5111 (emphasis added).

Contrary to 01's repeated assertions (Br. 3, 16, 19, 25, 35, 36), this Court never ruled that it was "improper" to "refer" to Dr. Ganger's Declaration during the prosecution history or that his statements were somehow irrelevant. *See* A5110-5111. 01's assertions ring particularly hollow, given that 01 never objected to this testimony or to the admission of Dr. Ganger's declaration at trial. A12580-12583; A12584 ("No objection, Your Honor."); A12718; A12941-12948; A12950; A12956; A12958; A12960. Indeed, 01 elicited testimony *from its own witnesses* regarding Dr. Ganger's statements to the PTO. A12708-12710(Cheung). 01 therefore waived any objection to Dr. Bhattacharjee's testimony regarding the prosecution history's confirmation of his noninfringement opinion. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) (objection to expert testimony was "waived by failing to object at trial"); *Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1335 (Fed. Cir. 2010) (rejecting challenge to jury verdict where plaintiff failed to object at trial to defendant's allegedly improper claim scope arguments).

The jury had ample reason to conclude that 01 did not prove that LogMeIn's

47

servers contain software that satisfies the two "create" limitations of claim 24.

That alone suffices to affirm the denial of JMOL.

> **2.  The noninfringement verdict is supported by substantial evidence that the LogMeIn servers do not contain the required "location facility," as this Court construed it**

The jury was properly instructed regarding this Court's construction of "location facility."  A14372; A14451; A5113-5114; *see also supra* p. 18. Accordingly, whether the accused products met that limitation was again a factual question for the jury.  *Versata*, 717 F.3d at 1262; *Tessera, Inc. v. ITC*, 646 F.3d 1357, 1364 (Fed. Cir. 2011), *cert. denied*, 132 S. Ct. 2707 (2012).

Substantial evidence supports a finding that LogMeIn's system does not contain "location facility" software that performs the four claimed functions.  *See supra* pp. 28-31.  Dr. Bhattacharjee testified, without objection, that the various software on LogMeIn's Web, Gateway, and Database servers does not satisfy the claimed "location facility" limitation because the software does not, individually or collectively, perform all four of the required location facility functions.  *See id.* Dr. Bhattacharjee discussed key excerpts of the source code and explained how they supported his noninfringement opinion.  *See id.*  Dr. Bhattacharjee also provided detailed testimony (again, without objection) that the Web server software, the Database server software, and the Gateway server software do not act

as a "location facility" that is distributed over several computers. A13796-13798; A13801-13804; *see supra* pp. 13-14, 28-31.

By contrast, 01's expert Dr. Grimshaw conceded that he failed to identify any source code file or any line of source code in LogMeIn's system that was part of the claimed "location facility" software. A12776-12777; A12932-12934. Dr. Grimshaw's failure to cite source code in support of his infringement opinion was remarkable, given that asserted claim 24 is directed to a "***computer program product.***" A1820. The jury was well within its rights to reject Dr. Grimshaw's assertions in favor of Dr. Bhattacharjee's detailed testimony regarding the location facility software limitation. *See i4i*, 598 F.3d at 848.

01 does not attempt to argue that there was no substantial evidence to support a finding that the accused LogMeIn servers lack the claimed location facility software. *See* Br. 26-31. Instead, 01 incorrectly accuses Dr. Bhattacharjee of not using this Court's "location facility" construction. *See* Br. 31.

As an initial matter, 01 never challenged or objected to Dr. Bhattacharjee's opinion as supposedly inconsistent with this Court's construction, either before or during trial. Accordingly, 01 has again waived any such argument. *See Lucent*, 580 F.3d at 1325 (objections to expert testimony on appeal were "waived by failing to object at trial"); *Verizon*, 602 F.3d at 1335 (rejecting challenge to jury verdict where plaintiff failed to object at trial to defendant's allegedly improper

claim scope arguments); *Versata*, 717 F.3d at 1264 (failure to file *Daubert* motion

precludes a later challenge to admissibility; once evidence is admitted, it is

available to support the verdict).

In any case, 01 is also wrong on the merits.  Dr. Bhattacharjee expressly

referenced and applied the Court's construction of "location facility" in providing

his opinions:

> Q. And if you would turn to DDX 1-20 in your binder. Do you have that in front of you?
> A. Yes, I do.
> Q. And do you understand that that is the definition of "location facility" that has been provided by the Court in this case?
> A. Yes.
> Q. And I am not going to ask you to read the whole definition, Dr. Bhattacharjee, because it is quite long. But is that consistent with the explanation that you just gave of the location facility?
> A. Yes, it is.
> Q. Did you consider this definition in forming your opinions in this case?
> A. Yes, I did.

A13785-13786.

01 is also wrong to argue that Dr. Bhattacharjee should not have been

allowed to use the term "program" interchangeably with "software" and "facility"

in his infringement analysis.  Br. 14-16.  01 never objected to this testimony at trial

and instead cross-examined Dr. Bhattacharjee regarding his (correct) use of the

term "program."  A13957.  Indeed, as this Court noted in its prior opinion, the

"terms 'facility' and 'program' are used interchangeably in the specification,

suggesting that the 'facilities' referenced throughout the patent are software, rather than hardware, components." A5106. Thus, Dr. Bhattacharjee's testimony was entirely consistent with this Court's construction of "location facility" and the plain meaning of the claim terms.[11]

### 3. The noninfringement verdict is supported by substantial evidence that the LogMeIn servers alleged to be the "locator server computer" are not "linked to the Internet and having a static IP address"

01 argued for and obtained a claim construction that the claimed "server computer" (or "locator server computer") could be multiple computers. Having received that construction, 01 was required to prove that all of the different LogMeIn computers that it contends comprise the "server computer" met the requirements applicable to the claimed server computer, including the requirement

---

[11] 01 repeatedly asserts that this Court construed the "location facility" as "software" that may be "subdivided into several programs." Br. 3, 9, 10, 15, 18, 27. But that is not how this Court construed the term. The Court held that the location facility is "software" that "may be *distributed* among one or more locator server computers." A5113-5114 (emphasis added). As discussed above (pp. 13-14, 30), LogMeIn presented substantial evidence that the software on LogMeIn's servers does not function as a "distributed" location facility, because the various software on LogMeIn's servers are not one big software program distributed among different server computers. A13796-13798; A13801-13804. Consistent with this testimony, this Court held that, during the reexamination, 01 "differentiat[ed] between technology in which the location facility itself creates the communication channel and technology in which *some component other than the location facility* creates the communication channel." A5110-5111 (emphasis added). This distinction recognized by the Court would become meaningless if, as 01 seems to suggest, any software program could arbitrarily be included as part of the "location facility"—there then could never be "some component *other than the location facility*."

of being "linked to the Internet and having a static IP address." A1820. 01 never sought a separate construction of this claim requirement and thus it was submitted to the jury—as 01 expressly requested (A14200-14201)—as a fact question. *See Versata*, 717 F.3d at 1262 (where parties do not request a construction of a limitation, the question whether the limitation is met is "a pure factual issue.").

The record contains substantial evidence that the accused LogMeIn servers that 01 contends make up the claimed "server computer" are not "linked to the Internet and having a static IP address." *See supra* pp. 31-33. In particular, Dr. Bhattacharjee explained that the LogMeIn Database servers are not linked to the Internet *at all*, because they are only addressable (*i.e.*, reachable) on LogMeIn's private network. *Id.* He also explained that LogMeIn redesigned its system in 2012 such that the Web servers no longer have static IP addresses, but instead have dynamic (changing) IP addresses. *Id.*[12] Dr. Bhattacharjee also explained that the LogMeIn Web, Database and Gateway servers all have different IP addresses, such that there is not one (much less one or more) static IP address that can be used to reach the combination of LogMeIn servers that 01 alleged make up the claimed "locator server." *See id.* The jury thus had ample evidence to conclude that the

---

[12]    The redesigned products were submitted to the jury separately, and the jury concluded that neither the original nor the redesigned products infringe. A1701.

asserted "locator server computer" was not "linked to the Internet and having a static IP address."

01 never objected to Dr. Bhattacharjee's testimony. Instead, 01 attempted to prove, through Dr. Grimshaw, that the static IP address requirement could be met if **only one** of LogMeIn's servers—such as a Web server—had a static IP address linked to the Internet. A12904-12907. But Dr. Grimshaw never explained how a static IP address for a Web server could be used to connect to a Database server or a Gateway server, without which there is admittedly no "locator server" computer. *Id.*

Dr. Grimshaw also failed to identify **any** static IP address for any of the LogMeIn Web servers. A12904-12905.[13] In fact, Dr. Grimshaw did not identify any static IP address anywhere in LogMeIn's system. *Id.* Dr. Grimshaw further ignored the claim requirements, testifying that his infringement opinion did not depend "at all" on whether the Gateway servers or the Database servers have a dynamic or a static IP address. A12906-12907. The jury was thus free to reject Dr. Grimshaw's testimony. *Kinetic Concepts, Inc. v. Blue Sky Med. Group, Inc.*, 554 F.3d 1010, 1024 (Fed. Cir. 2009).

---

[13] Dr. Grimshaw testified that an IP address has the form 68.87.102.36. A12786-12787. However, he only discussed **website addresses** (*i.e.*, logmein.com and secure.logmein.com) and did not identify any **IP address** in the LogMeIn system that met the static IP address limitation. A12904-12905; *see also* A13808-13809.

Faced with this substantial evidence that LogMeIn's system does not satisfy the static IP address requirement, 01 now asserts that Dr. Bhattacharjee's testimony (to which it did not object) ignored the plain meaning of the word "a" in the "static IP address" limitation.  Br. 32-33.  01 is again wrong.  Dr. Bhattacharjee specifically testified that he understood "a" to mean "one or more":

> Q. And for purposes of this patent and for patents generally, however, you would agree, to use your words, the "commonly accepted" meaning for the word "a" is one or more, correct.
>
> A. I think that is the usual construction of "a" in patent law, yes.

A13957(Bhattacharjee).  Dr. Bhattacharjee's testimony was also ***substantively*** consistent with that construction: his point was not that the "locator server" could only have ***one single*** static IP address, but rather that there must be "a" static IP address (whether one or more) that can be used to reach the ***entire*** locator server computer (not just one of the servers that comprise the locator server).  A13804-13807.  Thus, if the accused locator server is made up of more than one computer, then those computers together must have a static IP address that can be used to reach all of those computers, not simply a subset or portion of them.  01 did not and could not identify even one such address for the LogMeIn servers.  A12904-12905.[14]

---

[14] 01 now suggests that Dr. Bhattacharjee's testimony would "frustrate" the notion that the location facility can be distributed among one or more computers.  Br. 33. 01 appears to be arguing, for the first time on appeal, that multiple computers

Finally, this Court should reject 01's untimely argument that claim 24's

preamble (containing the "linked to the Internet and having a static IP address"

limitation) is not limiting. 01 never sought such an instruction to the jury, and 01's

counsel did not even suggest in summation that the "static IP address" was not a

claim requirement. A14313-14314. In any event, the term is a limitation, because

the phrase "a server computer linked to the Internet and having a static IP address"

is the antecedent basis for the "server computer" element recited (repeatedly) in the

body of claim 24 (*e.g.*, "a server computer program on the server computer"

A1820(13:59-60)). *See C.W. Zumbiel Co. v. Kappos*, 702 F.3d 1371, 1385 (Fed.

Cir. 2012) ("[T]he preamble constitutes a limitation when the claim(s) depend on it

for antecedent basis, or when it 'is essential to understand limitations or terms in

the claim body.'"); *see also Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d

1298, 1305-1306 (Fed. Cir. 1999) (preamble is limiting where "necessary to give

life, meaning, and vitality" to the claim). As Dr. Bhattacharjee explained, without

a server computer having a static IP address, the claimed invention would be

---

cannot be reachable using a single IP address (*id.*), but nothing in the record
supports that contention, which 01 waived by failing to assert below. Had 01 made
this argument below, LogMeIn would have responded with 01's expert Dr.
Grimshaw's admission that "a server may be realized with many different physical
machines, *all reachable using a single IP address.*" A8137 (Grimshaw Report,
¶42 (Jan. 21, 2011)). That report was not put into evidence, precisely because
neither 01 nor Dr. Grimshaw sought to contradict it, as 01 now seeks to do on
appeal.

unable to locate the locator server computer and, consequently, could not provide remote access between a remote computer and a personal computer. A13780; A13807-13808.

## III. THERE IS NO BASIS FOR A NEW TRIAL

### A. 01's Accusations Of Trial Misconduct Are Meritless And Unsupported By The Trial Record

01's new trial argument rests first on the false premise that LogMeIn argued a claim construction that was "contrary to this Court's mandate and contrary to the district court's jury charge." Br. 38. As shown above, that did not happen—and 01 never made one objection on that basis during any of the testimony or argument before the jury. LogMeIn's infringement defenses at trial expressly applied this Court's construction of the "location facility" requirement and the plain meaning of the other claim terms, including "create." *See* A13785-13786; A13802(Bhattacharjee); *see supra* p. 21.

LogMeIn provided this Court's construction of "location facility" to the jury on a demonstrative exhibit, and the construction was discussed *over twenty times* at trial. *See supra* p. 21. And LogMeIn explained during closing argument that the construction "*does say the software can be distributed among different computers. It does say there can be multiple servers.*" A14346-14347.

LogMeIn also did not "subvert[]" this Court's claim construction by referring to Dr. Ganger's declaration. Br. 39-41. LogMeIn's expert used Dr.

Ganger's declaration in the exact same way as this Court did in the prior appeal. As this Court noted, Dr. Ganger "distinguished the patented invention—in which the location facility creates the communication channel—from prior art in which another component, such as the remote computer or personal computer, uses the location facility to create the communication channel." A5110-5111. This Court certainly never suggested that the Ganger Declaration was somehow "off-limits" on remand, and again 01 never objected to any of this testimony.

As the district court recognized, nothing LogMeIn or Dr. Bhattacharjee told the jury was inconsistent with this Court's claim construction. A1202. The numerous trial excerpts above establish that Dr. Bhattacharjee's opinions were presented to the jury as technical facts about the way LogMeIn's system works. The district court also instructed the jury (twice) on the meaning of "location facility," providing this Court's construction verbatim (A14372, A14451), and the jury is "presumed to have followed" it. *See Finjan, Inc. v. Secure Computing Corp.,* 626 F.3d 1197, 1208-1209 (Fed. Cir. 2010).

01's misplaced and untimely allegations of trial misconduct are indistinguishable from the allegations this Court found insufficient to warrant a new trial in *Verizon Servs. Corp. v. Cox Fibernet Virginia, Inc.*, 602 F.3d 1325 (Fed. Cir. 2010). There, after a jury verdict of noninfringement, plaintiff Verizon (like 01 here) sought a new trial on the grounds that the defendant had made

"allegedly improper arguments." *Id.* at 1335. The Court explained, however, that Verizon (like 01) "did not, during the trial, request a limiting instruction based on Cox's allegedly improper claim scope arguments." *Id.* And Verizon (like 01) "did [not] object to any arguments made during Cox's closing." *Id.* Finally, the Court noted that Verizon (like 01) "had the opportunity, in its own closing, to rebut any improper or misleading statements it perceived in Cox's closing arguments." *Id.* The Court ultimately concluded that "[l]ooking at the entire record, including the extensive evidence and testimony along with the district court's comprehensive jury instructions, we see no reason to conclude that the district court abused its discretion in finding that the jury had not been deprived of its ability to decide this case." *Id.*

Here, as in *Verizon*, 01 failed to object even once to any alleged "violations" of this Court's claim construction, and there were none here. Accordingly, as in *Verizon*, the district court did not abuse its discretion in denying a new trial.

### B. None Of LogMeIn's Defenses Was Inconsistent With The Principle That "A" Means "One Or More," And 01 Waived Any Request For A Jury Instruction On That Point

01 argues (Br. 41-42) that LogMeIn's noninfringement defenses were contrary to the principle that "a" means "one or more." But LogMeIn never disputed that "a" means "one or more"; Dr. Bhattacharjee specifically testified to that understanding. A13957; *supra* pp. 21, 54. Other witnesses uniformly testified

58

that the locator server can be one or more computers.  *See* A12512(Cheung) ("[T]he locator server [computer] can be *one or more* than one computer box..."); A12513(Cheung) ("[S]erver computer 12 may comprise *one or more* computer as is well known."); A12736(Anka) (Q. … So the gateway is *one or more* servers; is that right? A. It's many servers.); A13942(Bhattacharjee) ("By implementing the processes, apparatus and systems of the present invention, *one or more* of the computer systems 14 through 18 can monitor and/or access virtually the entire functionality of any other computers…"); A13946(Bhattacharjee) (agreeing that "the location facility may be distributed among *one or more* locator server computers").  LogMeIn's summation likewise explained that the court's construction of "location facility" "*does say the software can be distributed among different computers.  It does say there can be multiple servers.*"  A14346-14347.  The district court also correctly instructed the jury that: "The locator server computer may comprise one or more computers, and the location facility may be distributed among *one or more* locator server computers."  A14372.  Accordingly, the trial record was clear that "a" means "one or more."

Although 01 initially sought a specific instruction to this effect, 01 eventually agreed with the district court's decision not to give such an instruction:

> COURT:… I'll certainly tell them it can be more than one facility. That definition is in there.  So it's really kind of irrelevant what "a" means because I'm telling them there's—there can be more than one, and that's all the meaning of "a" is –

MS. ALAVERDI: Yes, Your Honor.

A14207.  After this exchange, where 01 agreed with the Court's instruction, 01 never raised another objection to the jury instructions on this issue, despite raising other, unrelated objections after the district court read the instructions to the jury. *See* A14388-14390.  Accordingly, 01 waived any argument based on this objection.  *See Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1314 (Fed. Cir. 2003) (per curiam) ("A party's objection to a jury instruction is waived unless that party objects to the instruction before the jury retires to consider the verdict." (citing Fed. R. Civ. P. 51)); *see also City of Richmond v. Madison Management Group, Inc.*, 918 F.2d 438, 453-454 (4th Cir. 1990).  Nor has 01 identified any cognizable prejudice; the lack of an instruction on this point did not prevent 01 from *arguing* that "a" means "one or more" in its summation.  In fact, 01 did urge the jury that "a" means "one or more" (A14317)—a statement to which LogMeIn did not object.

## C.  The District Court Did Not Abuse Its Discretion In Admitting Evidence Of LogMeIn's Patents Subject To A Limiting Instruction

01 agreed to the admission of LogMeIn's patents at trial and conceded that they were relevant to certain issues in the case.  A12913 ("No objection."); A14310 ("I understand that there are some issues that their patents may be relevant to in terms of damages.").  Under this Court's well-established precedent, patents

on the accused device may be relevant to the doctrine of equivalents, reasonable

royalty damages, and willfulness—all of which were at issue in the trial.  *See, e.g.*,

*National Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1192 (Fed. Cir. 1996)

(in a doctrine of equivalents analysis, "the fact of separate patentability" is relevant

to "the trier of fact, along with the other evidence of the differences and similarities

of the patented and accused devices"); *Georgia-Pacific Corp. v. United States*

*Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (reasonable royalty

analysis may consider "significant features or improvements added by the

infringer"); *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 867 (Fed. Cir.

1985) (defendant "might reasonably have believed that its actions were protected

as within its own patentably distinct claims, while falling outside the [plaintiff's]

patent claims.").

Contrary to 01's assertion (Br. 43), the district court **granted** 01's request for

a limiting instruction to the jury regarding the relevance of LogMeIn's patents.

A14311.  The district court correctly instructed the jury LogMeIn's patents are

"not relevant to the issue of whether LogMeIn infringes the '479 patent" but are

"relevant to other issues in the case."[15]  A14380; *see also* A13609-13611; A13708-

---

[15]  When the instruction was given, the district court had already granted JMOL
that LogMeIn does not infringe under the doctrine of equivalents, so the court's
instruction was effectively limited to literal infringement, and was thus correct.

13713; A14336-14337.  01 accepted this instruction and raised no objection to it, despite raising other objections.  *See* A14311; A14388-14390.

01 takes issue with questions LogMeIn asked 01's expert witness during cross-examination.  Br. 43-44.  01 did not object to these questions at the time and therefore has waived its present argument.  In any event, the cross-examination was proper, because at the time 01 was still asserting infringement under the doctrine of equivalents, to which LogMeIn's patents were clearly relevant.  *See, e.g.*, *National Presto*, 76 F.3d 1185 at 1192.  There was accordingly nothing wrong with using LogMeIn's patents to show that, contrary to 01's equivalents claim, the LogMeIn system was "different from" (thus not equivalent to) 01's claimed invention.  A12913.  Again, 01 did not object.

Finally, 01 incorrectly argues that LogMeIn's closing argument asserted that LogMeIn's patents were evidence of noninfringement.  Br. 44-45.  Again, that is not true.  LogMeIn referred to its patents to rebut 01's baseless accusation in its opening statement that LogMeIn "stole" 01's invention.  *See* A14336 ("Let's talk about did LogMeIn steal 01's invention.").  LogMeIn had every right to rebut this unsupported theft accusation by presenting evidence that, far from "stealing" 01's invention, LogMeIn submitted 01's patent to the PTO to evaluate whether LogMeIn's patent application was patentably distinct from 01's patent (as the PTO concluded).

## IV.  CLAIM 24 IS INVALID FOR LACK OF ENABLEMENT

The enablement requirement of 35 U.S.C. § 112 "prevents both inadequate disclosure of an invention and overbroad claiming that might otherwise attempt to cover more than was actually invented."  *MagSil Corp. v. Hitachi Global Storage Techs., Inc.*, 687 F.3d 1377, 1381 (Fed. Cir. 2012).  01 sought and obtained a claim construction that the "locator server computer may comprise one or more computers, and the location facility may be distributed among one or more locator server computers."  A5113-5114.  Consequently, to enable the claim's full scope, the '479 patent must enable ***both*** a single-server ***and*** a multiple-server configuration of the locator server computer.  *Automotive Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1282 (Fed. Cir. 2007) (claims not enabled because they covered both mechanical and electronic side impact sensors, but specification failed to enable electronic side impact sensors); *Liebel-Flarsheim*, 481 F.3d at 1380 (claim invalid as not enabled because "the full scope of the claimed invention includes, an injector system with and without a pressure jacket," but the specification failed to enable the jacketless system); *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1244-1245 (Fed. Cir. 2003) (affirming finding of non-enablement where the claim was construed to cover steel strips containing either a Type 1 or a Type 2 aluminum coating, but the patent did not enable strips containing Type 1 aluminum coating).  01 must have enabled a multiple-server

configuration as of the '479 patent's June 2000 filing date. *See In re '318 Patent Infringement Litig.*, 583 F.3d 1317, 1323 (Fed. Cir. 2009).

The '479 patent provides no guidance regarding how to build a multiple-server implementation of the claimed locator server computer. *See* A1816(5:24-25) (merely asserting that "Server Computer 12 may comprise one or more computers, as is well known"); A1818(10:13-16) ("[I]t should be understood that such facilities can be combined with other facilities comprising the present invention, or such facilities can be sub-divided into separate facilities."). Other than these two conclusory statements, there are no drawings, explanatory text, or other descriptions that a person of ordinary skill in the art could use to implement the claimed multi-server distributed computer system. As in *Automotive Technologies*, these statements provide "only a starting point, a direction for further research" into a multiple-server implementation; they do not enable it. 501 F.3d at 1284.

LogMeIn presented clear and convincing evidence confirming the inadequacy of the patent's disclosure. Specifically, LogMeIn presented evidence showing that, years after 01 filed the '479 patent application, 01 repeatedly failed—despite extensive efforts—to build a multiple-server implementation of the claimed locator server computer. 01 admitted this fact when it petitioned the Government of Canada in June 2004 for tax benefits for further research. A22825

64

("*we are not sure how the architecture can still function*."); *see also supra* 33-35. 01 explained that, as of 2004, it had only developed a "single server platform" for the claimed locator server computer. A22825. 01 also described repeated failures to build a functioning multiple-server platform, admitting that it had "totally abandoned" some implementations and that other planned multiple-server "prototypes" "had not been completed yet." A22826; *see also supra* 33-35.

A patentee's failed attempts to build a particular embodiment of a claim demonstrate that the patentee did not enable the claim's full scope. *See Auto. Techs.*, 501 F.3d at 1284 (side-sensor not enabled where inventor "admitted that he had never built an electronic sensor for side impact"); *Liebel-Flarsheim*, 481 F.3d at 1379-1380 (non-enablement found based on "statements in the record by the inventors that testing of a syringe without a pressure jacket proved unsuccessful" and "there was no indication of any prototype of a pressure-jacketless injector having been made"); *AK Steel*, 344 F.3d at 1244-1245 (non-enablement found based on "evidence from AK Steel that despite its desire to utilize a Type 1 aluminum coating, it was unable to do so at the time of the effective filing date"); *National Recovery Techs., Inc. v. Magnetic Separation Sys.*, Inc., 166 F.3d 1190, 1197-1198 (Fed. Cir. 1999) (non-enablement found where inventor "believed that additional research, development, and experimentation needed to be conducted before a device could be built that would practice the invention as claimed").

01 had no reasonable explanation for these repeated failures. 01 offered only self-serving and uncorroborated testimony from Mr. Cheung that 01 built a multiple-server implementation of its locator server computer in 2000—which directly contradicted the representations Mr. Cheung made to the Canadian government in 2004. A12515. 01's expert also could not identify any independent evidence corroborating 01's assertion that it ever built a functioning multiple-server implementation of the claimed locator server computer. A14190-14191 ("I've not seen such a document.").

Having successfully pressed its claim construction to this Court, 01 subjected the '479 patent to an enablement challenge. *See Liebel-Flarsheim*, 481 F.3d at 1380 ("The irony of this situation is that Liebel successfully pressed to have its claims include a jacketless system, but, having won that battle, it then had to show that such a claim was fully enabled, a challenge it could not meet."); *MagSil*, 687 F.3d at 1381 (warning that "a patentee chooses broad claim language at the peril of losing any claim that cannot be enabled across its full scope of coverage"). 01's inability to build a functioning "multiple servers platform" even by 2004 is indisputable proof that the inventors had not enabled the invention's full scope at the time of filing. Accordingly, this Court should hold claim 24 invalid as not enabled.

# CONCLUSION

The district court's judgment of noninfringement should be affirmed, and the judgment of no invalidity should be reversed.

Dated: November 7, 2013             Respectfully submitted.

/s/ ARTHUR W. COVIELLO
WAYNE L. STONER
VINITA FERRERA
MARK C. FLEMING
DANA O. BURWELL
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

ARTHUR W. COVIELLO
WILMER CUTLER PICKERING
    HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
(650) 858-6000

*Counsel for Defendant-Cross-Appellant
LogMeIn, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Brief for Defendant-Cross

Appellant LogMeIn Inc. on counsel of record this 7thd day of November, 2013 via

the CM/ECF system.

Dated:  November 7, 2013

/s/  ARTHUR W. COVIELLO
ARTHUR W. COVIELLO
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
(650) 858-6000

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i).

1.      Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 28.1(e)(2)(B), the brief contains 14,543 words.

2.      The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.  As permitted by Fed. R. App. P. 32(a)(7)(B), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.


Dated:  November 7, 2013            */s/* ARTHUR W. COVIELLO
                                    ARTHUR W. COVIELLO
                                    WILMER CUTLER PICKERING
                                      HALE AND DORR LLP
                                    950 Page Mill Road
                                    Palo Alto, CA 94304
                                    (650) 858-6000